IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PATRICIA YATES, | : | Case No. 3:11-cv-464 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Patricia Yates ("Plaintiff") not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record (doc. 6), and the record as a whole.

## I. BACKGROUND

**A. Procedural History**

Plaintiff filed applications for DIB and SSI in December 2008, asserting that she has been under a "disability" since December 23, 2008 -- her alleged disability onset date. *See* PageID

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

169-75.  Plaintiff claims she is disabled due to rheumatoid arthritis, chronic back pain, Hepatitis C and post-menopausal stress syndrome.  PageID 199.

Following initial administrative denial of her applications, Plaintiff received a hearing before ALJ Amelia Lombardo on April 19, 2011.  PageID 84-106.  Thereafter, ALJ Lombardo issued a written decision, concluding that Plaintiff was not "disabled."  PageID 64-78.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The claimant has not engaged in substantial gainful activity since December 23, 2008, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairment: right knee meniscal tear with cartilage loss; mild to moderate lumbar and cervical osteoarthritis; and right shoulder tear with mild tendinopathy and mild bursitis (20 CFR §§ 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform medium work[2] as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following limitations: occasional overhead reaching with the right upper extremity and occasional stooping, crouching, kneeling, and crawling;

6. The claimant is capable of performing [her] past relevant work (20 CFR §§ 404.1565 and 416.965); and

---

[2]"Medium" work, as defined by 20 C.F.R. § 416.967, involves occasional lifting 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds.  Medium work can require standing and walking as much as six hours during any given eight-hour workday.  PageID 412.  It may also involve frequent stooping, grasping, holding, and turning objects.  *Id.* (citing 20 C.F.R. § 404.1567(c)).

      7.      The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2008, through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

PageID 67-77 (footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 51-55. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on January 3, 2012. Doc. 2.

    **B.**    **Plaintiff's Hearing Testimony**

Plaintiff was 51 years old on her alleged disability onset date, and thus considered a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d); *see also* PageID 195. Plaintiff testified that she is 5'7" tall and weighs 198 pounds. PageID 87. She is married and lives with her husband. *Id.* She has past relevant work as a truck driver. *See* PageID 200.

Plaintiff estimated that she can walk less than one block; stand for 10-15 minutes; and sit for 15-20 minutes. PageID 89. She believes she can lift a gallon of milk, but only using her left hand. PageID 89, 98. She suffers from knee and other pain, and takes Vicodin. PageID 88, 90, 97.

Plaintiff sees a mental health therapist twice a month at South Community, Inc. PageID 90. She has anxiety and difficulty with sleeping. *Id.* To that end, she was prescribed Prozac, Ativan, and a sleep aid. *Id.*

Plaintiff shares household chores with her husband. PageID 92. She cooks, washes dishes, does laundry, mops, and vacuums. PageID 92-93. She spends a typical day preparing meals, performing household chores, and watching television. PageID 94. Plaintiff testified that she can drive a car, and grocery shops on a weekly basis. PageID 93, 95, 98.

Plaintiff also testified that she has two adult children, and an 8-year-old grandson. PageID 91. *Id.* On occasion, she takes care of her grandson for up to five hours at a time. PageID 91, 97.

### C. Vocational Expert Testimony

Charlotta Ewers, a vocational expert ("VE"), testified at the hearing. PageID 100-04. The VE testified that, even with restrictions to occasional overhead reaching with the right upper extremity and occasional stooping, crouching, kneeling, and crawling, Plaintiff could perform her prior work as a truck driver -- a medium, semi-skilled occupation. PageID 100.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of

the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).[3] The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

---

[3]The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 8 at PageID 559-63; PageID 67-76, and the Court will not repeat them here.  Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff argues that the decision of the ALJ denying benefits should be reversed on eight different grounds:

1. The reports of the state agency's non-examining consulting physicians do not constitute substantial evidence sufficient to support the ALJ's findings;

2. The ALJ substitutes her own layperson analysis for that of a competent medical expert opinion;

3. The ALJ's recounting of Plaintiff's daily activities is inconsistent with the record, and is not substantial evidence which support her findings;

4. The ALJ failed to apply SSA regulations to the opinion of Plaintiff's treating physician, Erin McConnell, M.D.;

5. The ALJ ignored all of the psychiatric evidence of record, but for the opinions of agency consultants;

6. The ALJ specifically articulates a bias against treating source opinions;

7. The ALJ errs in her identification of Plaintiff's severe impairments; and

8. The ALJ's decision is not supported by substantial evidence.

Doc. 8 at PageID 564-74.

For the reasons that follow, the Court finds none of Plaintiff's allegations of error to be meritorious.

> A. **The ALJ Appropriately Considered the Medical Evidence of Record and Plaintiff's Daily Activities (First, Second, Third and Fourth Assignments of Error)**

In her first, second, and fourth assignments of error, Plaintiff challenges the ALJ's decision to accord little weight to the opinion of treating physician Erin McConnell, M.D., regarding the extent of Plaintiff's functional limitations, and instead favor the opinions of the consultative examining physician Damian Danopulos, M.D., and state agency record-reviewing physicians Leslie Green, M.D. and Lynne Torello, M.D.  In her third assignment of error, Plaintiff challenges the ALJ's consideration of her daily activities.  Because these assignments of error relate to the ALJ's weighing the medical source opinions with the other evidence of record, the Court will consider the arguments simultaneously.

The opinions of treating physicians are typically entitled to controlling weight.  *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007).  To that end, under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue of disability. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and is not inconsistent with the other evidence of record.  *Id.*; *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530 (6th Cir. 1997). Accordingly, an ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2).

Here, Dr. McConnell was Plaintiff's treating primary care physician during part of her alleged disability period. PageID 338-43, 463-94, 525-30. Plaintiff's assignments of error stem from an "Arthritis Residual Functional Capacity Questionnaire" which Dr. McConnell completed on September 13, 2010. PageID 459-62. Dr. McConnell opined, *inter alia*, that Plaintiff could only perform a job which would: permit shifting from sitting, standing, or walking at will; permit unscheduled breaks; require lifting of less than 10 pounds; and require hand/finger manipulation for no more than 5% of a workday. *Id*.

In assigning "little weight" to Dr. McConnell's assessment of Plaintiff's functional limitations, ALJ Lombardo determined that "[t]he conclusions presented by Dr. McConnell relative to the claimant's functional limitations are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." PageID 69, 75. Specifically, the ALJ noted that "[t]he functional assessment of the claimant's functional capabilities provided by Dr. McConnell has no credible basis." PageID 69.

Although Plaintiff has asserted several assignments of error challenging the ALJ's finding, Plaintiff has given only cursory attention to the requirement that a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record before it is entitled to controlling weight. *Walters*, 127 F.3d at 530 (quoting 20 C.F.R. § 404.1527(d)(2)). In fact, substantial evidence of record supports the ALJ's finding regarding Plaintiff's RFC.

-8-

In the assessment at issue, Dr. McConnell reported Plaintiff's subjective pain complaints, as well as Plaintiff's own estimates of her functional limitations (as indicated by the "per pt" abbreviation), but did not identify any supporting objective findings. *See* PageID 459-60. Moreover, although Dr. McConnell frequently recorded Plaintiff's subjective complaints of pain, her treatment notes do not consistently record objective abnormalities which might give rise to such pain. For instance, her treatment notes from June, August, and October 2010 -- the months immediately before and after the assessment at issue was completed -- indicated no musculoskeletal abnormalities. PageID 464, 470, 476. Similarly, in September 2010, the same month in which she completed the assessment, Dr. McConnell noted the absence of edema, cyanosis or clubbing in the extremities during her clinical examination of Plaintiff. PageID 468.

In addition, the ALJ reasonably considered the contrary medical evidence of record, including: (1) the opinions of Drs. Green and Torello -- who both opined that Plaintiff is capable of performing a limited range of "medium" work activity; (2) the opinion of Dr. Danopulos, who found in March 2009 that Plaintiff had normal, full ranges of motion in her cervical spine, dorsolumbar spine, shoulders, elbows, wrists, and hands-fingers; and (3) Plaintiff's conservative treatment, which was devoid of any attempt at physical therapy or pain management. PageID 69-70, 74-76, 314-23, 326-33, 349.

The ALJ also reasonably considered Plaintiff's daily activities which, as the ALJ correctly found, were "inconsistent with the symptoms and limitations" Plaintiff alleges. PageID 76; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain). For example, the ALJ noted that Plaintiff "went on vacation in 2010 after the alleged [disability] onset date"; went camping with her

husband; belongs to the YMCA; and "enjoys shopping, walking, and visits with her grandchild." *See* PageID 76, 428, 434, 539.  Plaintiff is the caretaker for her husband who receives disability, and is independent in her activities of daily living.  PageID 92-94.  Consultative examiner Jerry Flexman, Ph.D. reported Plaintiff's activities of daily living, which include:  preparing food throughout the day; doing dishes and laundry; cleaning, sweeping, and general straightening up around the house; taking out the trash; going to the store two to three times a month; eating out; going to the library; visiting with her children, in-laws, and grandchildren; babysitting her grandchildren; and engaging in activities such as using the computer, going to thrift stores, and going to the King's Island amusement park.  PageID 295.  The ALJ's finding -- that these activities are inconsistent with the level of limitation Plaintiff alleges -- is well-supported by substantial evidence.

Plaintiff's argument -- that the ALJ improperly "substitutes her own lay analysis for competent medical expert opinion," *see* doc. 8 at PageID 564 -- is unavailing.  The record demonstrates that the ALJ did not do so; instead, the ALJ reasonably adopted the findings by physicians of record other than Plaintiff's treating physician, Dr. McConnell.  The Sixth Circuit has opined that "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."  *Hoskins v. Comm'r of Soc. Sec.*, 106 F.App'x 412, 415 (6th Cir. 2004).  The shared opinion of Drs. Green and Torello -- that Plaintiff is capable of performing medium work -- is supported by the objective medical evidence of record, and serves as substantial evidence in this case.

To the extent Plaintiff argues that the ALJ erred because evidence exists in the record which supports a finding of disability, the Court finds such an argument equally unavailing.  *See Buxton*, 246 F.3d at 772.  It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987),

and that is exactly what the ALJ reasonably did here. The ALJ acted well within the permissible "zone of choice" in her decision to accord less than controlling weight to Dr. McConnell's RFC assessment. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

> **B.** **The ALJ Reasonably Found Certain Impairments "Severe" at Step Two (Fifth and Seventh Assignment of Error)**

Plaintiff also argues that the ALJ erred by not including a mental health, spine, Hepatitis C, carpal tunnel syndrome, and/or obesity impairment in the list of "severe impairments" at Step Two of the five-step sequential analysis. Doc. 8 at PageID 573-74. To that end, Plaintiff also claims that the ALJ "ignored" mental health treatment records from Plaintiff's mental health therapist. PageID 571. Both of these arguments are unmeritorious.

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Accordingly, once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify other alleged impairments as "severe" at Step Two does not constitute reversible error. *Id*.

Accordingly, the "severe impairment" determination at Step Two has been characterized by the Sixth Circuit as a "*de minimis* hurdle." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (holding "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"); *see also* 20 C.F.R. § 404.1521(a). Although "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation…the severity requirement

may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

Here, the ALJ found at Step Two that Plaintiff had a number of severe impairments including a right knee meniscal tear with cartilage loss; mild to moderate lumbar and cervical osteoarthritis; and right shoulder tear with mild tendinopathy and mild bursitis. PageID 67. Thereafter, the ALJ conducted a thorough and detailed analysis of the pertinent evidence of record. PageID 67-76.

The ALJ's findings in this regard are supported by substantial evidence. The ALJ considered Plaintiff's physical impairments other than those she found to be "severe" -- including thoracic spine degeneration, carpal tunnel syndrome, obesity, and Hepatitis C -- but found none to significantly limit Plaintiff's ability to perform basic work activities. *See* PageID 73. The ALJ appropriately looked to substantial evidence of record, including objective clinical results and multiple medical source opinions, in finding that the aforementioned impairments are not "severe" under the regulations. *Id*.

Regarding Plaintiff's alleged mental impairments, the ALJ devoted two pages of her decision to reviewing Plaintiff's mental health issues and treatment. *See* PageID 71-72, 76. Given the substantial evidence of record demonstrating only mild symptomology, the ALJ committed no error in reasonably determining that Plaintiff's mental health issues would not significantly limit her ability to do basic work activities. *Id*.

    **C.**    **Plaintiff Has Failed to Demonstrate ALJ Bias (Sixth Assignment of Error)**

In weighing Dr. McConnell's opinion, the ALJ found:

> The possibility always exists that doctors may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid

> unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

PageID 70.  Based upon this statement, Plaintiff contends that "ALJ Lombardo is biased against treating source opinions in so much as her personal beliefs about the 'realities' of doctor patient relationships negatively frame her consideration treating source opinion evidence." Doc. 8 at PageID 572.

Although the ALJ's statement is perhaps questionable in nature -- and the Court makes no finding as to the accuracy of the statement in this particular case – the language in question appears to be a boilerplate paragraph occasionally utilized by ALJs in this Circuit.  *See*, *e.g.*, *King v. Astrue*, No. 2:12-cv-165, 2012 U.S. Dist. LEXIS 136960, at *24 (S.D. Ohio Sept. 25, 2012); *Rodgers v. Comm'r of Soc. Sec.*, No. 1:10-CV-434, 2011 U.S. Dist. LEXIS 103266, at *29 (W.D. Mich. Aug. 16, 2011); *Maggart v. Astrue*, No. 2:08-cv-5, 2009 U.S. Dist. LEXIS 127665, at *17 (M.D. Tenn. Feb. 11, 2009); *May v. Astrue*, No. 4:08-CV-77, 2009 U.S. Dist. LEXIS 123358, at *23-24 (E.D. Tenn. Dec. 30, 2009).

In *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), the Sixth Circuit encountered an ALJ's decision which utilized the exact same paragraph as stated above.  The *Blakley* court did not hold that it is improper for an ALJ to examine a treating physician's motives, but instead faulted the ALJ in that case for rejecting a physician's opinion *solely* on the ground that the doctor's motives were suspect. *Id.* at 408.

In the present case, the ALJ reasonably supported her decision -- to accord little weight to Dr. McConnell's RFC assessment -- for the myriad of reasons discussed *supra*.  Thus, the present circumstance is distinguishable from that presented in *Blakley*.  For the reasons already addressed, substantial evidence thus supports the weight accorded to Dr. McConnell's RFC assessment by the ALJ.

      **D.    The ALJ's Non-Disability Finding is Supported by Substantial Evidence (Eighth Assignment of Error)**

Plaintiff last argues that the ALJ's non-disability finding is, as a general matter, unsupported by substantial evidence. Again, the Court disagrees for two reasons. First, the record strongly suggests that Plaintiff can perform a wide range of activities and is not disabled. *See supra*. This conclusion is supported by the medical evidence, discussed above, which shows that Plaintiff's impairments, whether viewed singly or in combination, do not demonstrate disability. *Id*. Second, it is not the Court's role to sift through the facts and make a *de novo* determination of whether a claimant is disabled. The ALJ, not the Court, is the finder of fact. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ reasonably undertook that role here. *Id*. So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 401. Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed facts, the Court must affirm the ALJ even if the Court might have resolved those disputed facts in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds fault with all eight of Plaintiff's assignments of error. The ALJ's decision is found supported by substantial evidence, and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

January 23, 2013                                        s/Michael J. Newman
                                                                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).